IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| JAMES LEOPOLD, III,<br><br>        Petitioner,<br><br>vs.<br><br>EARL HOUSER, Superintendent, Goose Creek Correctional Center,<br><br>        Respondent. | No. 4:21-cv-00002-JKS<br><br>MEMORANDUM DECISION |

James Leopold, III, a state prisoner proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. Leopold is in the custody of the Alaska Department of Corrections ("DOC") and incarcerated at Goose Creek Correctional Center. Respondent has answered, and Leopold has not replied.

I. BACKGROUND/PRIOR PROCEEDINGS

On December 20, 2007, Leopold was charged with seven counts of second-degree sexual abuse of a minor in an indictment alleging that Leopold had sexually abused two eight-year-old girls. Leopold pleaded not guilty and proceeded to a jury trial. Before the case was submitted to the jury, the Alaska Superior Court granted judgments of acquittal on two counts. After deliberation, the jury convicted Leopold on three counts, and acquitted him on the remaining two. The Superior Court subsequently sentenced Leopold to an aggregate sentence of 105 years' imprisonment.

Through counsel, Leopold appealed his conviction, arguing that: 1) the Superior Court erred by allowing the State to admit into evidence video recordings of each girl's interview at the Bethel Child Advocacy Center ("CAC") because the interviewer's techniques were unduly suggestive; and 2) on direct examination of the complainants the prosecutor asked a series of leading questions that improperly recapitulated statements the girls had made during those interviews. The Alaska Court of Appeals unanimously affirmed the judgment against Leopold, concluding that he failed to preserve his challenge to the admissibility of the video recordings, and, although the prosecutor's questions were improper, any error was harmless. *Leopold v. State*, No. A-10940, 2013 WL 6576733, at *6 (Alaska Ct. App. Dec. 11, 2013). Leopold petitioned for hearing in the Alaska Supreme Court, which was summarily denied on February 26, 2014. Docket No. 6-15.

Leopold then filed a *pro se* application for post-conviction relief ("PCR") pursuant to Alaska Criminal Rule 35.1. After counsel was appointed, Leopold filed an amended PCR application raising eight claims of ineffective assistance of counsel. The State moved to dismiss the amended PCR application for failure to plead a *prima facie* claim for relief. The Superior Court granted the motion, and dismissed Leopold's application. Through counsel, Leopold appealed the trial court's dismissal, contending that the Superior Court erred in dismissing three of his claims. The Court of Appeal agreed that Leopold failed to present a *prima facie* case of ineffective assistance of counsel and unanimously affirmed the judgment of the Superior Court. *Leopold v. State*, No. A-13131, 2020 WL 9174642, at *2 (Alaska Ct. App. July 15, 2020). Leopold petitioned for hearing in the Alaska Supreme Court, which was denied without comment on October 6, 2020. Docket No. 6-28.

Leopold then timely filed a *pro se* Petition for a Writ of Habeas Corpus to this Court dated December 28, 2020. Docket No. 1 ("Petition"); *see* 28 U.S.C. § 2244(d)(1),(2). Briefing is now complete, and the Petition is ripe for adjudication.

## II. GROUNDS/CLAIMS

In his *pro se* Petition before this Court, Leopold raises a single claim of ineffective assistance of counsel. Specifically, Leopold faults trial counsel for failing to adequately object to the admission of the complainants' recorded interviews.

## III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000). The term unreasonable is a common term in the legal world. The Supreme Court has cautioned, however, that the range of reasonable judgments may depend in part on the nature of the relevant rule argued to be clearly established federal law. *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.").

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision." *Id.* at 412. The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts. *Early v. Packer*, 537 U.S. 3, 10 (2002). Where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it

cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'" *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *See Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)). A summary denial is an adjudication on the merits and entitled to deference. *Harrington v. Richter*, 562 U.S. 86, 99 (2011). Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

Leopold has not replied to Respondent's answer. The relevant statute provides that "[t]he allegations of a return to the writ of habeas corpus or of an answer to an order to show cause in a habeas corpus proceeding, if not traversed, shall be accepted as true except to the extent that the judge finds from the evidence that they are not true." 28 U.S.C. § 2248; *see also Carlson v. Landon*, 342 U.S. 524, 530 (1952). Where, as here, there is no traverse filed and no evidence offered to contradict the allegations of the return, the court must accept those allegations as true. *See Phillips v. Pitchess*, 451 F.2d 913, 919 (9th Cir. 1971).

## IV. DISCUSSION

Leopold argues that he was deprived of his right to the effective assistance of counsel on the ground that trial counsel failed to adequately object to the admission of the complainants' recorded interviews.[1] To demonstrate ineffective assistance of counsel under *Strickland v. Washington*, a defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced his defense. 466 U.S. 668, 687 (1984). A deficient performance is one in which "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.*

The Supreme Court has explained that, if there is a reasonable probability that the outcome might have been different as a result of a legal error, the defendant has established prejudice and is entitled to relief. *Lafler v. Cooper*, 132 S. Ct. 1376, 1385-86 (2012); *Glover v.*

---

[1] Notably, Leopold does not re-assert in his Petition his claim raised on direct appeal that the admission of the interviews was error under Alaska Rule of Evidence 801(d)(3). In any event, the Supreme Court has made clear that federal habeas power does not allow granting relief on the basis of a belief that the state trial court incorrectly interpreted the state evidence code in ruling on the admissibility of evidence. *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (citing *Cupp v. Naughten*, 414 U.S. 141, 147 (1973); *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977); *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). "The admission of evidence does not provide a basis for habeas relief unless it rendered the trial fundamentally unfair in violation of due process." *Johnson v. Sublett*, 63 F.3d 926, 930 (9th Cir. 1995) (citing *Estelle*, 502 U.S. at 67). Where a due process violation is alleged stemming from an evidentiary challenge, federal courts review such alleged due process violations for whether admission of certain evidence "so infected the entire trial that the resulting conviction violates due process." *Estelle*, 502 U.S. at 72.

The record here does not support that the admission of the interviews violated Leopold's right to due process. The victims, who were ages 8 and 9 at the time of the interview and age 12 at trial, did not lack capacity due to age, and were both subject to cross-examination at trial. Accordingly, any argument as to the trustworthiness of the interviews goes to the weight, not the admissibility, of the evidence, and Leopold's right to confrontation was not violated. *See Walters v. McCormick*, 122 F.3d 1172 (9th Cir. 1997) (no due process violation based on the admission of child victim's recorded interview because, although "a finder of fact might well look with scepticism" on child victim's testimony that contained numerous inconsistencies, "that is a question of weight, not admissibility" and opportunity to challenge those inconsistencies through cross-examination was adequate to satisfy Confrontation Clause concerns); *cf. Spencer v. Peters*, 996 F. Supp. 2d 1146, 1159 (W.D. Wash. 2013) ("[T]here is no constitutional due process right to have child witnesses in a child sexual abuse investigation interviewed in a particular manner . . . .") (quoting *Devereaux v. Abbey*, 263 F.3d 1070, 1075 (9th Cir. 2001)).

*United States*, 531 U.S. 198, 203-04 (2001); *Williams*, 529 U.S. at 393-95. Where a habeas petition governed by AEDPA alleges ineffective assistance of counsel, the *Strickland* prejudice standard is applied and federal courts do not engage in a separate analysis applying the *Brecht* harmlessness standard. *Avila v. Galaza*, 297 F.3d 911, 918, n.7 (9th Cir. 2002); *see also Musalin v. Lamarque*, 555 F.3d 830, 834 (9th Cir. 2009). Under this rubric, in reviewing ineffective assistance of counsel claims in a federal habeas proceeding:

> The question "is not whether a federal court believes the state court's determination" under the *Strickland* standard "was incorrect but whether that determination was unreasonable—a substantially higher threshold." And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.

*Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citations omitted); *see also Runningeagle v. Ryan*, 686 F.3d 758, 775 (9th Cir. 2012).

Thus, Leopold must show that his trial counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different. *See Hill v. Lockhart*, 474 U.S. 52, 57 (1985). An ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient showing under either of the *Strickland* prongs. *See Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

In support of his claim, Leopold contends that his attorneys failed to competently object to the admission of the CAC video recordings. Leopold raised this claim to the Alaska state courts in his PCR application. The Superior Court concluded that Leonard failed to present a *prima facie* case of ineffective assistance of counsel, Docket No. 6-22, and the Court of Appeals agreed, Docket No. 6-25, *Leopold*, 2020 WL 9174642, at *2.

Leonard fares no better on federal habeas review. Leonard argued in his PCR application that his pre-trial attorney, Brian Kay, was ineffective because he "failed to argue that a foundation must be presented in order to assess the reliability and trustworthiness of the

-6-

statement of a child victim," and the trial attorney who later took over her case, Brooke Alowa, "did nothing to further challenge the CAC interview techniques." Docket No. 6-16 at 6, 9. He avers that Kay failed to:

- "argue that the questions asked by Ms. Aluskak were two-choice questions;"

- "object to and argue that throughout much of the interview Ms. Aluskak repeated C.L.'s answers;"

- "object to and present an argument to the court that Ms. Aluskak asked leading questions;"

- "object that the interview of T.L. was suggestive because in some instances it allowed for a response of one or two choices;"

- "argue that the interview of T.L. was leading because the pattern of repeating an answer after each answer would lead a minor to conclude that a right choice was contained in the two choices, that the interviewer was expecting a choice be made between the two choices, and not some other response that deviated there from."

Docket No. 6-16 at 7.

But as the Superior Court concluded on post-conviction review, "Leopold has not established that had Kay performed differently there would be a likelihood of the CAC interviews being precluded at trial." Docket No. 6-22 at 11. The record reflects that Kay argued that the "interview at issue f[ell] far short of meeting [Alaska Evidence Rule 801(d)(3)'s] requirements;" specifically, its admission would violate the rule's requirements of reliability, trustworthiness, justice, and avoiding undue influence due to the questionable interviewing techniques used. Docket No. 6-4 at 6. The Superior Court rejected Kay's arguments. Specifically, the Superior Court issued the following written findings of facts:

> In reviewing the interview, and in weighing the issues discussed, the court does not find the interview was the product of undue influence. This court further finds the interview to be sufficiently reliable and trustworthy.
>
> . . . .
>
> Among the factors this Court finds persuasive in finding are:
>
> 1) [The victims' ages (T.L. was 8 and C.L. was 9 at the time of the interview].
> 2) The manner in which the interviewer conducted the interview.
> 3) The fact [the victims] did not appear to be coached.
> 4) The lack of evidence concerning undue influence.

5) The Legislature's desire that this type of evidence be admissible.
Docket Nos. 6-5 at 3, 6-6 at 3.

As aforementioned, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El*, 537 U.S. at 340. This Court has conducted its own review of the interviews in question, and has determined that the trial court's factual findings are reasonable. The Court therefore must presume that the trial court's factual findings are correct. Kay fails to show that the trial judge would have issued contrary factual findings had Kay taken the actions enumerated above. The state courts' rejection of Leopold's claim is thus both reasonable and fully supported by the record, and forecloses habeas relief here.

In support of his claim against Alowa, Leonard submits a declaration from her that states, "Regrettably, I did not think to challenge the underlying trustworthiness of the interview techniques. Honestly, it just hadn't occurred to me to hire an expert regarding the suggestability of children and the improper techniques used by some forensic interviewers. No one in the criminal realm was doing that at the time, that I knew of, so I didn't either." Docket No. 6-18 at 2.

The Ninth Circuit remains sensitive to the issue of retaining and consulting with defense experts. *See, e.g.*, *Weeden v. Johnson*, 854 F.3d 1063, 1070-71 (9th Cir. 2017) (holding that trial counsel was deficient in failing to seek psychological evaluation about effect of petitioner's youth on her mental state); *Richter v. Hickman*, 578 F.3d 944, 953-54 (9th Cir. 2009) (en banc) (trial counsel's failure to consult an expert in blood evidence constituted ineffective assistance), *rev'd by Harrington v. Richter*, 562 U.S. 86 (2011). The cases finding ineffective assistance based on defense counsel's failure to consult with an expert or offer expert testimony appear to involve situations where the prospective defense expert testimony would: 1) exonerate the defendant; 2) conflict with powerful expert testimony offered by the Government;

3) significantly weaken adverse Government expert testimony; and 4) aid in preparing defense counsel's cross-examination of the adverse Government expert testimony.

Here, however, Leopold fails to demonstrate that the expert evidence identified in Alowa's declaration would have led to a different outcome in this case. Simply put, the expert evidence at issue here lacks the probative value of the evidence utilized in the Ninth Circuit cases cited above. This is particularly true given that Alowa strenuously argued that the CAC interviews were not trustworthy. For example, Alowa argued in summation:

> [D]on't be confused about what this is. The CAC is not there to investigate. They aren't there to find the truth. These children were brought to the CAC by the troopers when the troopers already had a suspect and a theory of the case in mind. And Ms. Aluskak asked them questions, questions of the children to help the troopers collect evidence for their case where they'd already come up with a conclusion about what happened.
> She is a trained forensic interviewer. And if you listen to the tape, with your logic rather than your emotion and you analyze it, what you will hear is that these girls never come out and give their own version of what happened. They don't say that these things happened. Rather she leads them, walks them carefully down a path of either-or questions until she gets the answers that the trooper wants. He's sitting right in the next room. She even goes out and confers with them. That's what the CAC is. It isn't there to find out the truth, it's there to document evidence for the troopers about what the troopers want to hear.

Docket No. 12-4 at 6.

The prosecution likewise stressed the importance of the CAC interviews when he stated in closing, "[I]f you, members of the jury, if you think that Elena Aluskak inappropriately asked questions, then find him not guilty. If you believe she coerced those children into saying those things because it didn't happen, find him not guilty." *Id.* at 8. In finding Leopold guilty, the jury apparently answered those questions in the negative. Even if expert testimony on the suggestability of children might theoretically have been beneficial, Leopold fails to show that the jury would have found differently if Alowa had presented such expert testimony. *See Knowles*, 556 U.S. at 121 (habeas relief is unavailable on the grounds that there was "nothing to lose" by calling an expert).

Moreover, Alowa avers that she did not consult an expert because practitioners were not regularly consulting such experts at that time. Accordingly, Leopold fails to establish deficiency

because he does not show that a reasonably competent attorney would have taken such action. In sum, Leopold fails to establish that either Kay or Alowa rendered ineffective assistance, and he is not entitled to habeas relief.

## V. CONCLUSION AND ORDER

Leopold is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. *See* 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)). Any further request for a Certificate of Appealability must be addressed to the Ninth Circuit Court of Appeals. *See* FED. R. APP. P. 22(b); 9TH CIR. R. 22-1.

The Clerk of the Court is to enter judgment accordingly.

Dated: May 26, 2021.

s/James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
Senior United States District Judge